Atlanta Master Printers Club v. Commissioner.
Atlanta Master Printers Club v. Commissioner
Docket No. 107607.
United States Tax Court
1942 Tax Ct. Memo LEXIS 72; 1 T.C.M. (CCH) 107; T.C.M. (RIA) 42602; November 25, 1942
*72 William F. Buchanan, Esq., 833 Hurt Bldg., Atlanta, Ga., for the petitioner. J. Y. Porter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has found deficiencies in petitioner's taxes and 25 percent delinquency penalties as follows: Income tax 1935 and 1936
$165.05
$41.26
Excess-profits tax 1935 and 1936
73.07
18.27
The petitioner filed no income tax return for either year and the collector for Georgia had to prepare and file such returns for it, in accord with Revised Statutes, section 3176, as amended. The single question is whether petitioner is a "business league" and so exempt from tax under section 101 (7), Revenue Acts of 1934, and the corresponding and identical section of the Revenue Act of 1936. [1] The facts are as follows: Findings of Fact The Atlanta Master Printers Club, Inc., the petitioner, was first organized about forty-eight years ago. On May 1, 1934, it was incorporated under the laws of the State of Georgia, and on August 15, 1934, its charter was amended so that it then became and has since remained a corporation without capital stock, not organized for pecuniary profit. The purposes for which it was organized *73 are stated in its Constitution as follows: Section 1. To effect a thorough organization of the employing printers and those engaged in the allied industries of Atlanta and its trade area into a trade association so that conditions in the printing and allied industries thereof may be improved; to promote the welfare of the printing industry and allied trades; to improve the condition of printers individually and collectively, and their service to the public; to encourage fraternal spirit and resist encroachments on their rights; to secure uniform and united action in the common interests; to develop better methods of management and more highly trained personnel, and more ethical relations among themselves and with others, through collective and co-operative effort. In 1935 and 1936, petitioner's membership consisted of 48 individuals and firms, representing about 90 percent of the printing industry of Atlanta *74 and its environs. It includes both large and small printers. Membership in petitioner is obtained by application, although this step has not necessarily been complied with by all of petitioner's present members. But the services therein specified are performed by petitioner for all members irrespective of whether or not they have signed an application for membership. Until the National Industrial Recovery Act was invalidated, petitioner's income was received from the printing industry in Atlanta on the basis of the mechanical day work of each individual plant. Thereafter, petitioner reverted to its former method of collecting dues, ranging $1from. to $100 per month, on the basis of mutual agreement between the individual printers and the petitioner's board of directors. Three paid the maximum, and a little more than half of the 48 members over $10. Petitioner's board tried to divide the operating expense among the members in proportion to the volume of work. In 1935 and 1936 the petitioner had only one paid officer, a secretary who received $200 per month; and it employed two "estimators" at $200 ( $225) and $160 per month, respectively, and a stenographer. The petitioner has at *75 all times maintained club rooms for the use of its members. It has also conducted an estimating school, an employment service for the benefit of individuals in the printing trade without charge to either workman or employer, and a school of salesmanship. In addition, petitioner arranges for bi-monthly "sales group" meetings at which free lunches are served. Salesmen are encouraged to come, regardless of their employer's membership, in order to prevent altercations between customer and rival printers which often result from the salesmen's too sharp competition. Moreover, the petitioner arranges for lectures to its members by men nationally recognized in the printing field, arranges printing exhibits to improve design, conducts weekly programs, and sponsors many social affairs throughout the year for the purpose of getting printers together in order to foster a spirit of friendship, cooperation and sound ethics, and to prevent cut-throat competition among members of the trade. In addition to the foregoing, the petitioner offers its members the extremely specialized services of a trained "estimator" who figures cost of production materials, time, and, occasionally, the margin of profit *76 on given orders, and acts as a check against estimating done by each individual printer or firm. The services of the two estimators employed by petitioner in 1935 and 1936 were used by the petitioner's members generally, and by anybody else in the industry who wished to do so. The function of petitioner's estimating department is to determine a fair price on printing in order to enable the printer to make a living and to retain customers in Atlanta. Petitioner operates a credit bureau for the purpose of advising its members on the reputation of prospective customers for paying their bills. The petitioner also attempts on behalf of its members to obtain payment of overdue accounts. To this end, the petitioner sends to such tardy debtors a series of three collection letters but does not actually employ the services of a collector or attempt to institute suit on behalf of its members. Finally, the petitioner conducts what is called its "Educational Campaign" which is carried on widely through the medium of a trade paper known as "Press Proofs". Copies of this are issued without cost to the petitioner, since the paper, ink, engravings and press work are all contributed free by the several *77 interested companies. The purpose of this advertising campaign is to advise prospective customers of the printing facilities of Atlanta and to secure business for its printers. As a result of this advertising campaign a great increase in printing business has been obtained in the Atlanta territory, especially the more technical work in the 4-color process formerly done in New York City or Chicago. On one occasion the petitioner was instrumental in inducing the State of Georgia to discontinue its prison-operated printing activities and, as a result, was able to restore to commercial printers over the State a great many thousands of dollars of printing business. Petitioner, during the taxable years, was a business league within the meaning of section 101 (7) of the Revenue Acts of 1934 and 1936. Opinion KERN, J.: The only question here is whether petitioner is liable for income taxes or is exempt under section 101 (7), Revenue Act of 1934 and the corresponding identical section of the Revenue Act of 1936. We are unable to make a valid distinction between the facts presented by the record herein, and the facts present in Commissioner v. Chicago Graphic Arts Federation, Inc., 128 Fed. (2d) 424 *78 (7th Cir., decided May 23, 1942), which affirmed an unreported decision of this Court. Therefore, on the authority of that case, and the cases therein cited, Decision will be entered for petitioner. Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS * * * * *
(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;↩